# EXHIBIT 1

|  | AUSA: | Shankar Ramamurthy | Telephone: (313) 226-9562 |
|---|---|---|---|
|  | Special Agent: | Andrew Crump | Telephone: (313) 670-5817 |

AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

## UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
All funds on deposit in nine JP Morgan Chase Bank ) Case No.
accounts as further described on Attachment A )
)

Case: 2:19-mc-51397-2
Judge: Roberts, Victoria A.
Filed: 09-25-2019
IN RE: SEALED MATTER (MAW)

### APPLICATION FOR A WARRANT
### TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Eastern___ District of ___Michigan___ is subject to forfeiture to the United States of America under _____ U.S.C. §

See Below *(describe the property)*:

18 U.S.C. § 981(a)(1)(A) and (C); 18 U.S.C. § 982(a); and 28 U.S.C. § 2461 - All funds on deposit in nine JP Morgan Chase Bank accounts as further described on Attachment A

The application is based on these facts:
See Attached Affidavit

☐ Continued on the attached sheet.

_____
*Applicant's signature*

FBI SA Andrew Crump
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: September 25, 2019

_____
*Judge's signature*

City and state: Detroit, MI

Elizabeth A. Stafford    U. S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEIZURE WARRANT

I, Andrew F. Crump, Special Agent for the Federal Bureau of Investigation, being duly sworn, depose and state as follows in support of the government's application for the issuance of seizure warrants for all funds in the following bank and investment accounts, collectively referred to as the **Target Accounts**:

a. All funds on deposit in JP Morgan Chase Account Number 378862863, held in the name of All American Pharmacy, LLC;

b. All funds on deposit in JP Morgan Chase Account Number 378895962, held in the name of Beta Discount Pharmacy & Health, LLC;

c. All funds on deposit in Pinnacle Financial Partners Account Number 800104795034, held in the name of Big Bend Pharmacy, LLC;

d. All funds on deposit in JP Morgan Chase Account Number 282033320, held in the name of Liberty Health & Life, LLC;

e. All funds on deposit in JP Morgan Chase Account Number 378875873, held in the name of HCP Pharmacy, LLC;

f. All funds on deposit in JP Morgan Chase Bank Account Number 378882770, held in the name of Heart of America Pharmacy;

g. All funds on deposit in JP Morgan Chase Account Number 378903253, held in the name of Venice Pharmacy;

h. All funds on deposit in TD Bank Account Number 428-5598319, held in the name of Great Lakes Medical Pharmacy;

i. All funds on deposit in JP Morgan Chase Account Number 377385296, held in the name of A1C Holdings;

j. All funds on deposit in JP Morgan Chase Account Number

378889809, held in the name of Quaker Community Pharmacy;

k. All funds on deposit in JP Morgan Chase Account Number 377385593, held in the name of A1C Holdings;

l. All funds on deposit in Unity Bank Account Number 1760026185, held in the name of James & Patricia Letko;

m. All funds on deposit in E*Trade Financial Account Number 67475111, held in the name of James & Patricia Letko;

n. All funds on deposit in Northwestern Mutual Account Number A49237943, held in the name of James Letko.

The funds in the **Target Accounts** constitute a portion of the proceeds of a health care fraud and money laundering scheme that resulted in over $80 million in Medicare funds being fraudulently reimbursed to A1C and its subsidiary pharmacies beginning in 2015.

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), duly appointed according to law and acting as such, and have been employed as such since October 2014. As a Special Agent in the FBI, I have received general law enforcement training at the FBI Academy, as well as specialized training on the subjects of health care fraud, money laundering and telephone analysis from the FBI, and I have been personally involved in investigations concerning health care fraud, prescription drug diversion and methods used to finance and conceal the profits of those operations. I have interviewed numerous self-proclaimed

drug users, medical doctors, and owners and employees of medical clinics. I have investigated and conducted surveillance on numerous doctors, pharmacies and prescription drug dealers. I have consulted with agents and officers of numerous federal, state, and local agencies in gaining an understanding of current trends in the diversion of prescription drugs and health care fraud. I am currently assigned to the Detroit division of the FBI and my duties include investigating health care fraud and prescription drug diversion.

2. As a Special Agent with the FBI, I am responsible for investigating violations of United States federal law, including, but not limited to Title 18, United States Code, Section 1347 (Health Care Fraud), Title 18, United States Code, Section 1349 (Conspiracy to Commit Health Care Fraud), Title 18, United States Code, Section 371 (Conspiracy to Pay and Receive Illegal Remunerations), Title 42, United States Code, Section 1320a-7b(b) (Paying and Receiving Remunerations), and Title 18, United States Code, Section 1035 (False Statements In A Health Care Matter). In connection with investigating these offenses, I have participated in the execution of search warrants for documents and other evidence in cases involving violations of these offenses.

3. Based on my training, experience, and participation in financial investigations involving the concealment of funds and assets in order to prevent detection by law enforcement agencies, I have observed that:

    a.    Individuals involved in illegal activities often generate large amounts cash and money through those activities. These individuals often use the cash and money to facilitate the operation of their illegal activities by disguising fund transfers to close associates as legitimate income payments, and purchasing legitimate personal items, such as housing, cars, jewelry, and clothing.

    b.    Individuals attempting to conceal their income or illegal activities frequently transfer assets to friends, relatives, or close associates to avoid detection of those assets by the IRS and other government agencies. Even though such assets are in the names of others, the true owners of the assets typically continue to exercise dominion and control over these assets.

    c.    Individuals involved in illegal activities often use banks to conduct financial transactions involving proceeds of their criminal activities. Such individuals often establish multiple businesses and transfer funds between accounts to disguise the nature, source, ownership, control, and location of criminal proceeds, and to make their wealth appear to have been legitimately obtained. Such individuals also often commingle their criminal proceeds with legitimate funds in bank accounts or other financial accounts in order to conceal the illegal source of their criminal proceeds.

I refer to these methods that criminals often use to conceal the nature, source, ownership, control, and location of their criminal proceeds as "money laundering."

4.    I have knowledge of the facts set forth in this affidavit as a result of my participation in the investigation and information provided to me by other law enforcement agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this investigation.

## PURPOSE OF THE AFFIDAVIT

5. This Affidavit is submitted in support of an Application seeking authorization to seize and/or freeze all funds on deposit contained in the following bank, investment, and college savings accounts:

    a. All funds on deposit in JP Morgan Chase Account Number 378862863, held in the name of All American Pharmacy, LLC;

    b. All funds on deposit in JP Morgan Chase Account Number 378895962, held in the name of Beta Discount Pharmacy & Health, LLC;

    c. All funds on deposit in Pinnacle Financial Partners Account Number 800104795034, held in the name of Big Bend Pharmacy, LLC;

    d. All funds on deposit in JP Morgan Chase Account Number 282033320, held in the name of Liberty Health & Life, LLC;

    e. All funds on deposit in JP Morgan Chase Account Number 378875873, held in the name of HCP Pharmacy, LLC;

    f. All funds on deposit in JP Morgan Chase Bank Account Number 378882770, held in the name of Heart of America Pharmacy;

    g. All funds on deposit in JP Morgan Chase Account Number 378903253, held in the name of Venice Pharmacy;

    h. All funds on deposit in TD Bank Account Number 428-5598319, held in the name of Great Lakes Medical Pharmacy;

    i. All funds on deposit in JP Morgan Chase Account Number 377385296, held in the name of A1C Holdings;

    j. All funds on deposit in JP Morgan Chase Account Number 378889809, held in the name of Quaker Community Pharmacy;

    k.    All funds on deposit in JP Morgan Chase Account Number 377385593, held in the name of A1C Holdings;

    l.    All funds on deposit in Unity Bank Account Number 1760026185, held in the name of James & Patricia Letko;

    m.    All funds on deposit in E*Trade Financial Account Number 67475111, held in the name of James & Patricia Letko;

    n.    All funds on deposit in Northwestern Mutual Account Number A49237943, held in the name of James Letko.

6.    As discussed herein, the statements in this affidavit are based upon information I learned during the investigation, including information provided to me by other law enforcement agents and my experience and background as an FBI Special Agent. Since this affidavit is being submitted for the limited purpose of supporting seizure warrants, I have not included every fact known to me concerning this investigation. This Affidavit is intended to show merely that sufficient probable cause exists for the requested seizure warrants and does not set forth all of my knowledge about this investigation.

7.    Based upon my training and experience, and the information set forth in this Affidavit, there is probable cause to believe that the funds in the target accounts constitute (a) the proceeds of illegal activity, and/or property traceable to proceeds of illegal activity, specifically conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349 and health

care fraud in violation of 18 U.S.C. § 1347, (b) the gross proceeds of illegal activity, and/or property traceable to gross proceeds of illegal activity, specifically health care fraud in violation of 18 U.S.C. § 1347; and/or (c) property involved in, or traceable to property involved in Money Laundering, in violation of 18 U.S.C. §§ 1956 and 1957. As such, the funds are subject to seizure and civil and/or criminal forfeiture pursuant to 18 U.S.C. §§ 981 (a)(1)(A) and (C), 18 U.S.C. §§ 982(a)(1) and (7), 18 U.S.C. § 1956(c)(7)(F), and 28 U.S.C. § 2461(c).

## VIOLATION STATUTES

8.  Title 18, United States Code, Section 1347, prohibits health care fraud: Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—

(1) to defraud any health care benefit program; or

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

9.  Title 18, United States Code, Section 1343, prohibits wire fraud: Whoever, having devised or intending to devise any scheme or artifice to defraud,

or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

10. Title 18, United States Code, Section 1349, provides that any person who attempts or conspires to commit health care fraud or wire fraud shall be subject to the same penalties as those proscribed in 18 U.S.C. § 1347 and 18 U.S.C. § 1343, respectively.

11. Title 18 of the United States Code, Section 1956 prohibits engaging in monetary transactions in property derived from specified unlawful activity:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –

(A) with the intent to promote the carrying on of a specified unlawful activity;

(B) knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the rouse, the ownership or control of the proceeds of specified unlawful activity.

12. Title 18, United States Code, Section 1956, sets forth a list of "specified unlawful activities," which includes, "any act or activity constituting an offense involving a Federal health care offense." *See* 18 U.S.C. § 1956(c)(7)(F).

13. Title 18, United States Code, Section 1957 prohibits knowingly engaging in or attempting to engage in a monetary transaction in criminally derived property or a value greater than $10,000 and is derived from specified unlawful activity.

14. Title 18, United States Code, Section 24(b), defines a "health care benefit program" as, among other things, "any public or private plan . . . affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service, for which payment may be made under the plan."

## APPLICABLE FORFEITURE STATUTES

15. 18 U.S.C. § 981 *Civil Forfeiture*

    (a)(1) The following property is subject to forfeiture to the United States:

        (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

        \*      \*      \*      \*

        (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657,

> 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.
>
> (b)(1) Except as provided in section 985, any property subject to forfeiture to the United States under subsection (a) may be seized by the Attorney General and, in the case of property involved in a violation investigated by the Secretary of the Treasury or the United States Postal Service, the property may also be seized by the Secretary of the Treasury or the Postal Service, respectively.
>
> (b)(2) Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure . . . .
>
> (b)(3) Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found.

16. 18 U.S.C. § 982 *Criminal Forfeiture*

> (a)(7) The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

17. 18 U.S.C. § 984 *Civil Forfeiture of Fungible Property*

> (a)(1) In any forfeiture action in rem in which the subject property is . . . . funds deposited in an account in a financial institution . . .

  (A)  it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for forfeiture; and

  (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

18. "If a person is charged in a criminal case with a violation of an Act of Congress for which civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case." 28 U.S.C. § 2461(c).

## THE INVESTIGATION

**A. Entities Involved**

19. A1C Holdings, LLC ("A1C") was a Florida limited liability company located at 3660 Enterprise Way, Miramar, FL 33025. A1C was an umbrella corporation acting as the corporate entity to at least the following pharmacies:

- Great Lakes Medical Pharmacy d/b/a All American Medical Pharmacy ("AAMP");

- Heartland Medical, LLC ("Heartland");

- Heart of America, LLC ("HOA");

- Beta Discount Pharmacy and Health Services ("Beta");

11

- Steeplechase Express Rx DBA HCP Pharmacy, LLC ("Steeplechase" or "HCP");
- Hudgins Pharmacy, Inc. ("Hudgins");
- Big Bend Pharmacy, LLC ("Big Bend");
- Liberty Health & Life, LLC ("Liberty");
- Venice Pharmacy ("Venice"); and
- Quaker Community Pharmacy ("Quaker").

20. AAMP was a pharmacy and Michigan limited liability company located at 23247 Pinewood Street, Suite 100, Warren, MI 48091, within the Eastern District of Michigan.

21. The principals of these entities include the following who are operators, and/or managers: James Letko and co-conspirators Jon Letko, Edward Letko, Steven King, Jeffrey Kolmer.

**B.    The Medicare Program**

22. The Medicare Program ("Medicare") is a federally-funded health care program providing benefits to persons who are over the age of sixty-five or disabled. Medicare is administered by CMS, a federal agency within the Department of Health and Human Services ("HHS"). Individuals who receive Medicare benefits are referred to as Medicare "beneficiaries."

23. Medicare is a "health care benefit program," as defined by 18 U.S.C. § 24(b). Medicare has four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D). Medicare Part B helps pay the cost of physician services, medical equipment and supplies, and other health services and supplies not paid by Part A. This investigation involves Medicare Part D, prescription drug benefits.

24. A pharmacy can participate in Medicare Part D by entering a retail network agreement directly with a plan or with one or more Pharmacy Benefit Managers ("PBMs"). A PBM acts on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy can join the plan's network. When a Medicare Part D beneficiary presents a prescription to a pharmacy, the pharmacy submits a claim either directly to the plan or to a PBM that represents the beneficiary's Medicare drug plan. The plan or PBM determines whether the pharmacy is entitled to payment for each claim and periodically pays the pharmacy for outstanding claims. The drug plan's sponsor reimburses the PBM for its payments to the pharmacy. PBMs sometimes contract with Pharmacy Services Administrative Organizations (PSAOs) to administer some of its services, including reimbursement to the pharmacy.

25. Medicare, through CMS, compensates the Medicare drug plan sponsors and pays the sponsors a monthly fee for each Medicare beneficiary of the